Mr. Vasquez will likely spend the rest of his life in prison because Carmen Zapata identified him as a man who saw him coming. Now ordinarily this would not present any problem or violation because that's how trials work after all.   The jury decides and we have a verdict. Here, though, that process broke down. Because of Ms. Zapata's physical limitations, Mr. Vasquez was totally unable to test that identification. That is, it was not subject to cross-examination as guaranteed by the Sixth Amendment. Ms. Zapata does not speak or hear and doesn't know sign language. Consequently, her total cross-examination and her direct examination, for that matter, was conducted through the means of two interpreters. One took the question from the questioner and then signed that in American Sign Language to a second interpreter who then gestured it to the witness. The witness in turn gestured or facial expressions to convey an answer. And then that was interpreted to American Sign Language by the interpreter. The second interpreter then spoke the answer. Obviously, this presented huge problems in terms of being able to ask questions. Well, I'm sure it's a very difficult case, but number one, she was there. Nobody denies that she was not present. She was physically present, Your Honor. And it seems that the ‑‑ that her testimony was fairly solid that this is the guy. That's correct. What essentially happened was she was able to testify by narrative, but was hardly ‑‑ was not able to answer any questions. So, of course, that totally advantaged the government or the prosecutor here because they were able to get out the narrative. This is the guy that shot my son. But the traditional function of cross‑examination is to be able to test that through questioning. She was totally unresponsive to any questions, any direct questions asked by defense counsel. So while she was there, it was as if she wasn't there in terms of being able to respond to questions. But she was there, and the jury saw all of her limitations. And wouldn't that go to the weight? In other words, if you had a child, as is often the case where you have a child molestation case, and you have a young witness who is examined, who demonstrates on the witness stand that she or he is really confused or garbled or whatever, that doesn't mean that there's been a denial of the opportunity to cross‑examine. It means that their cross‑examination has demonstrated that the witness is not reliable. How is that different in this case? The difference here is that the unreliability was visited only upon the defense counsel in terms of the limitation on examination. That is, in the child witness case, the problems in her testimony are obviously apparent to both sides, and the prosecutor as well as the defense counsel has to live with them. Here, because she was able to give a coherent narrative in terms of identifying them, this is the man that shot my son, that's fairly easy to judge. How did that come into evidence, that coherent narrative? Well, it was ostensibly through question and answer. But if you read the examination, not very many of the answers were responsive to the questions. She proceeded basically to tell her story, and that's what she did a number of times. And the gist of that story was that Mr. Vasquez shot her son. But Mr. Vasquez was totally unable to test that identification in the way that one would normally test that identification. Well, what opportunity did you have to see that? Why did you say that he was wearing black shoes when he was really wearing white shoes? Why did you say that he had hair when undisputed evidence was that he was a bald-headed? So that was the ñ that narrative came in through the questions. The narrative... That you just ñ what you just gave. The description. So all of the flaws and inconsistencies came through the questioning, correct? The jury heard the questions. Well, that's correct. That's correct. Okay. So I'm still trying to ñ believe me, I'm sympathetic with the circumstance. But what you seem to suggest is that this witness is incompetent to testify, period. No. Quite the contrary.  She was incompetent to testify. Then what should have happened on cross-examination? I think in this case, once it was clear that she was not subject to cross-examination, her testimony should have been stricken. But she wasn't. But the counsel, you say she was fully competent to testify, and yet you say that she wasn't subject to cross-examination. She was subject to cross-examination. And everything that you are arguing to us this morning is based on the conduct of this witness in court, in front of the jury, on cross-examination. Normally that goes to the weight. On direct examination. Yes. And it would be as if... No, I've gone... It would be as if her statement had been introduced. And then there wasn't an opportunity to test it, because fortunately what happened was that it was as if the judge instructed her not to answer. That was the effect of what happened here. We didn't get a single coherent answer on cross-examination. Her direct examination went totally untested in the same manner as if she weren't there. Okay. Thank you. Do you have a question? Yes, Your Honor. Mr. Tanaka, as a general matter, why shouldn't we say that the confrontation clause incorporates a principle that you take your eyewitnesses as you find them? You know, kind of like you take a tort victim as you find them. If the eyewitness is deaf and dumb, but unfortunately doesn't know a traditional sign language, why shouldn't we say that the confrontation clause may mean that the judge has to do the best possible to facilitate the cross-examination? But once that's done, you kind of take the witness as you find them. Well, Your Honor, I agree with that general principle that cross-examination is an essential part of confrontation. Now, I guess the question is whether when someone can't answer questions, whether that fulfills that constitutional imperative. And my response is no, it does not. Supreme Court cases all talk about confrontation as the right opportunity for cross-examination. Stintzer talks about it as being a functional test. That is, the purpose of cross-examination is to ensure the reliability of the witness's statement, to be able to probe it, to test for inconsistencies, to do all sorts of things that give the jury a chance to decide whether this person is a reliable, truthful witness. And you can't do that if the person can't answer questions. It's not good enough for them just to be there. And I would submit that that is the essence of the confrontation clause, and that's what was missing in this case. So what clearly established Supreme Court law establishes that this case, where you had full opportunity, the judge was not imposing any restrictions or limits, where it was the disability of the witness solely that precluded effective cross-examination. What's the closest Supreme Court case that you could cite to it? The case has established a principle. That is, Douglas v. Alabama established the principle that the primary interest secured by confrontation is cross-examination. What's the closest factual case? We all know the principle. Now, what's the closest factual case that would be able to say, under AEDPA constraints, that the court violated clearly established Supreme Court law or unreasonably applied it? I guess Davis v. Alaska, in light of the restriction on cross-examination, in that the witness was instructed not to answer certain questions going to bias. Here's the same functional and effective violation, in that this witness couldn't answer any questions going to bias. All right, I'll give you a minute for rebuttal. Let's hear from the State. May it please the Court, David Glassman, Deputy Attorney General, for responding. First of all, thank you to the Court for granting my request. Turning to the facts of this case. You owe us one. I'm sorry, Your Honor. You owe us one now. Well, at least I won something. Turning to the facts of the case first, I submit that it simply begs the question to say that the burdens that were occasioned by the physical challenges faced by this witness somehow were only borne by the prosecution. It is just simply not the case that somehow these challenges all fell on one side. In fact, the trial judge specifically made the observation during the trial that this presented a challenge to both sides. And the accommodations that were made, the arrangements that were made, were made with the acknowledgment of both sides. That is, there was no objection ultimately to the way in which this examination was conducted. And what emerged ultimately, and I think it's important to point this out, and I hope, Judge Gould, you can also see this and where I'm purged here, is that we have in this case, therefore, literally hundreds of pages of examination of this witness, much of which is cross-examination. So it is simply not the case that one can say that the cross-examination was, in fact, precluded, or that the disadvantage of the witness only impaired the cross-examination. It was obviously the government that was obligated to prove beyond a reasonable doubt not only that the witness could identify someone that she claimed was the killer, but that her testimony was reliable. And that was the debate throughout the trial in the extensive, in the days of   We have in this case the evidence, much of which is cross-examination, and in these summations. Kagan. Counsel, if you didn't have, if you were deprived of the testimony of this witness, there's nothing more, is there? That's, your case is gone. Is that correct? Well, it is not gone, Your Honor. Obviously, a large part of it is gone. But there was the corroborative testimony of the witness, Sanchez, that is summarized in our brief, who hears the defendant make incriminatory statements, acknowledge his gang membership, acknowledge a vendetta against the victim, sees someone that she describes as resembling the defendant shortly before the murder. So the testimony is corroborated. But I submit we never get to the harmless error inquiry. We never get to the Brecht evaluation because we cannot find on this record, first of all, as a factual matter, that there was in fact a preclusion of cross-examination. And second of all, because as a legal matter, one cannot say that. And let me say that even though I'm now going to couch this argument in terms of the ADPA, because that is the analysis that the Court must conduct, given that this is a 2254 case, the same argument would apply outside the ADPA context. And that is that when one looks at cases in which a denial of confrontation has been found by the Supreme Court, there is in fact a preclusion of cross-examination. So in Davis v. Alaska, the case which counsel described as the closest that he could find to these facts, there is a preclusion of impeachment evidence. In Douglas v. Alabama, when a witness wrongfully invokes the Fifth Amendment, or in Thule v. Borg, which is a case from the circuit on the same subject, there is a complete absence of cross-examination. And those cases cannot be compared to a case in which a disabled witness presents direct testimony, is subjected to cross-examination. Instead, the cases that are much closer to this case from the Supreme Court, are cases cited in our brief, Delaware v. Fensterer and United States v. Owens. In Fensterer, a witness cannot recall the method used to arrive at a scientific conclusion. And the Supreme Court makes clear in that case that that type of inability does not constitute a denial of cross-examination, because cross-examination ultimately vindicates the right to challenge the witness and to raise questions about the testimony. It doesn't, in effect, guarantee an answer of a certain sort. And that point is reinforced by the Supreme Court two years later in United States v. Owens, in which as a result of a brain injury, there is great difficulty in providing responses to cross-examination to test the witness's account. And there, too, the Court reiterates that that is not the right that the Sixth Amendment protects. What are the inconsistencies in this case? The inconsistencies, Your Honor, are, there are numerous inconsistencies, depending upon how one views the record, which the jury ultimately resolved. I just want you to run by what are those inconsistencies. Just name them. Well, I don't have a list in mind, because I think when you read, when you evaluate her testimony in context, you have to reconcile her account, her attempt to account for the way the room is configured, the way the events unfold, the clothing of the perpetrator, his facial appearance. The point is not, I think, to engage in sort of the dueling excerpts of squibs from the transcript. The point is that when one reads the entire record, and obviously the jury heard the testimony in its entirety, the jury was convinced that proof had been established beyond a reasonable doubt. And in that regard, I would submit that alleged inconsistencies are no different than any other case in which, for whatever reason, a witness's testimony is subject to impeachment. And we say there, as one would say here, that this became a question for the jury. The jury had a superior opportunity, certainly vis-a-vis an appellate court, to evaluate the reliability of this witness and to determine whether or not the prosecution had carried its burden. And there is no Supreme Court authority remotely approaching this case that would entitle this officiant to relief. Unless the Court has any questions, I'll submit. Well, I'm not quite satisfied with your answer, because if there were so many inconsistencies, you get to the point where you think, well, how can we rely on this testimony and what was developed on cross-examination? Well, as to that point, Your Honor, my response would be that if ultimately – and I'm certainly not acknowledging that this is such a case. There are plenty of cases in which witnesses offer accounts that a jury must resolve which are not crystal clear to an appellate court. But if at a certain point, when evaluating the testimony of any witness, whether a disabled witness or a witness who has no comparable disabilities who just offers an inconsistent account, at some point, I think what the Court is suggesting is that the question becomes whether or not the evidence supports the conviction for purposes of sufficiency of the evidence review, Jackson v. Virginia. And that is not this case. That's not the claim. The claim here is not that the sum total of this evidence does not adequately establish his guilt. The claim is that there was a denial of the right of confrontation, even though, as I've indicated, this petitioner cannot point to any decision of the Supreme Court or this Court in which a trial court who was making accommodations to address the unique scenario presented by a witness who had a certain type of disability and where those procedures received the consent of the parties involved at the trial, that an appellate court could later deem that process so fraught with difficulty and, as you say, inconsistency of the witness, that it constituted a constitutional violation. And that there was a denial of the right of confrontation. And finally, then, as to that, I would point out that to the extent there are inconsistencies, as the Court says, that proves too much because it shows that there was in fact cross-examination, there was impeachment, and there was an opportunity to evaluate the witness's testimony in its entitlement. So you can't say, at the same time, I couldn't cross-examine and I thoroughly impeach the witness. Thank you. Judge Gould, do you have any questions? Well, Mr. Glassman, this one point, just to clarify. The victim's girlfriend, she testified at the trial, but did she not make a definite identification? Your Honor, I would have to... The best that I can tell you is that her testimony was that she had seen him previously. She had seen him weeks before the shooting when he drives by in his car. She had heard him say to the victim that he'd better leave the area because another gang member had been killed. And she correctly identified the make and model of his car. That was the extent of her testimony. All right. Counsel, thank you. Thank you.  Thank you, Your Honor. It is not the case that AEDPA bars behaviorist relief in cases such as this one, where there's been a clear constitutional violation. I urge the Court to read the cross-examination for itself in its entirety, to get a full sense of how futile and meaningless it actually was. Actually, I think we all came to argument today having done that, so we'll maybe read it again, but don't assume we haven't. It is an interesting exercise. But the upshot is that there was no only inference, I think, fair inference, is that there was no effective cross-examination in this case. There was no meaningful testing of her identification. And this is a case where a man's been convicted of murder. Well, why is this, since you have limited time, and we understand your concern, but isn't counsel for the State correct that if rather than a confrontation clause issue, isn't this sufficiency of the evidence? There was no ‑‑ was there a motion to undo the verdict for failure of evidence? There wasn't. Actually, the sufficiency claim was raised in district court. The reason that we didn't press it here is because if you accept that she's a competent witness, she identified him as a shooter. That's sufficient evidence. Okay. But what was missing was her defense's ability to test her identification. Okay. We have your argument. Interesting case. Thank you, counsel, both of you. Case is submitted. All right. The next case on calendar is Iga versus Folger.
judges: Fletcher B. , Fisher, Gould